UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CESAR CASSARRUBIAS,

        Petitioner,              Case No. 1:09-cv-1172

v.                                 Honorable Robert Holmes Bell

JOHN PRELESNIK,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving a term of 15 to 23 years, imposed by the Allegan County Circuit Court on December 17, 2003, after Petitioner pleaded nolo contendere to first-degree criminal sexual conduct (CSC I), MICH. COMP. LAWS § 750.520b(a)(1) (person under 13 years of age). In his *pro se* petition, Petitioner raises five grounds for relief, as follows:

    I.      DOES DUE PROCESS REQUIRE POST-CONVICTION DNA TESTING OF A FOREIGN HAIR COLLECTED FROM THE COMPLAINANT'S BODY AFTER THE INCIDENT?

    II.     WAS [PETITIONER] PREJUDICE[D] AND DENIED A FAIR TRIAL FROM HIS TRIAL COUNSEL'S INEFFECTIVE ASSISTANCE, WHERE DEFENDANT'S TRIAL COUNSEL FAILED TO DISCOVER AND PRESENT POTENTIALLY EXCULPATORY DNA RESULTS?

    III.    WAS THE CIRCUIT COURT'S DECISION TO SENTENCE [PETITIONER] AS AN ADULT AN ABUSE OF DISCRETION AND NOT BASED ON SUFFICIENT EVIDENCE AND A THOROUGH INVESTIGATION?

> IV. IS [PETITIONER] ENTITLED TO RESENTENCING BECAUSE THE STATUTORY SENTENCING GUIDELINES WERE MISSCORED AS TO OFFENSE VARIABLES 7, 8, 9 AND 14 AND THE SENTENCE WAS A DEPARTURE FROM THE STATUTORY SENTENCING GUIDELINES IMPOSED WITHOUT COMPLIANCE WITH DEPARTURE REQUIREMENTS.
>
> V. WAS APPELLATE COUNSEL INEFFECTIVE BY DENYING [PETITIONER] HIS DIRECT APPEAL AFTER SENTENCING[,] WHICH DENIED [PETITIONER] HIS STATE AND FEDERAL RIGHTS OF DUE PROCESS AND THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

Respondent has filed an answer to the petition (docket #8) arguing that Petitioner's claims should be denied. Petitioner submitted a response (docket #29). Upon review and applying the AEDPA standards, I find that Petitioner's claims are non-cognizable or without merit. Accordingly, I recommend that the petition be denied.

## Procedural History

Petitioner's conviction stemmed from the sexual assault of a six-year-old boy in July 2003. Petitioner was charged with one count of CSC I, one count of second-degree criminal sexual conduct (CSC II), and one count of kidnapping - child enticement. Petitioner, who was sixteen-years-old at the time of the offense, was one of three offenders implicated in the offense.

At a hearing held on October 15, 2003, Petitioner and co-defendant Celso Salvador-Jimenez each pleaded nolo contendere to one count of CSC I. In exchange for Petitioner's plea, the prosecutor dismissed the kidnapping and CSC II charges. (Plea Hearing (PH) Tr. 3, docket #15.) The prosecutor agreed to leave it to the trial court's discretion whether to sentence Petitioner as a juvenile or an adult, but reserved the right to make a statement at sentencing. (*Id.*) Under the plea agreement, Petitioner was required to cooperate fully with the prosecutor in the investigation of a third potential defendant. (*Id.*) This cooperation included testifying against the third potential

defendant if he went to trial. (*Id.*)  The parties agreed to use a police report to establish a factual basis for the *nolo contendere* plea.  (Plea Tr. 5.)  According to the report, the six-year-old victim claimed that Petitioner and Salvador-Jimenez held the victim down and took turns inserting their penises into the victim's anus.  (Plea Tr. 17.)  After a thorough plea colloquy, the trial court accepted Petitioner's guilty plea.  (Plea Tr. 18.)  At a hearing held on December 17, 2003, the trial court sentenced Petitioner to imprisonment of 180 to 280 months.  (Sentencing Tr. 42, docket #16.)

Petitioner's appellate counsel, Pedro Ferrer, did not pursue a direct appeal, but filed a motion to vacate plea or resentencing in the Allegan County Circuit Court, raising Petitioner's first four grounds for habeas corpus relief.  (*See* 12/15/04 Mot. to Vacate Plea, docket #21.)  Following a hearing on January 11, 2005, the trial court denied Petitioner's motion.  (*See* Mot. Hearing Tr., docket #23.)

Nearly two years later, on November 13, 2006, Mr. Ferrer filed a motion for relief from judgment (docket #19) on behalf of Petitioner in the Allegan County Circuit Court, raising the same four claims presented in the motion to vacate plea.  The court denied the motion in an order dated January 25, 2007, for failure to establish entitlement to relief under M.C.R. 6.508(D)(3).  (*See* 1/25/07 Allegan County Circuit Court Ord., docket #18.)  Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, which was denied on April 25, 2008, for failure to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D).[1]  (*See* 4/25/08 Mich. Ct. App. Ord., docket #22.)  Petitioner subsequently sought leave to appeal in the Michigan Supreme Court, which denied Petitioner's application on October 21, 2009, because he failed to meet the

---

[1]In July 2008, Petitioner filed a habeas corpus petition in this Court challenging his conviction.  *See Cassarrubias v. Scutt*, No. 1:08-cv-640 (W.D. Mich.)  On December 5, 2008, the Court issued an opinion and order dismissing the petition without prejudice for failure to exhaust his state-court remedies.

burden of establishing entitlement to relief under M.C.R. 6.508(D). (*See* 10/21/09 Mich. Ord., docket #23.)

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001); *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result, (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case, or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410.

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the

issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Richter*, 131 S. Ct. at 785 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

**Discussion**

I. **Procedural Default**

The state has raised the defense of procedural default. When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

Petitioner did not file a direct appeal. He later raised his first four grounds for relief in a motion for relief from judgment. The Allegan County Circuit Court issued an order denying

Petitioner's motion under MICH. CT. R. 6.508(D)(3). (*See* 1/25/07 Allegan County Circuit Court Ord., docket #18.) Under that provision, a defendant may not seek relief for a claim that could have been raised in a previous appeal, unless he can establish "good cause" for failing to raise the grounds on appeal and "actual prejudice." MICH. CT. R. 6.508(D)(3)(a)-(b). Here, the trial court found that Petitioner failed to make the requisite showing. The Michigan appellate courts subsequently issued standard orders denying Petitioner's applications for leave to appeal under MICH. CT. R. 6.508(D). Because the last reasoned decision was the trial court's order relying on MICH. CT. R. 6.508(D)(3), this Court must conclude that the state courts rejected Petitioner's claims on the basis of a procedural default. *See Guilmette*, 624 F.3d at 291. Petitioner's fifth ground for relief also appears to be procedurally defaulted, because Petitioner never raised the claim in the state courts and he no longer has an available state-court remedy, as he already filed his one allotted motion for relief from judgment with regard to his conviction. *See Cone*, 243 F.3d 961, 967 (6th Cir. 2001), *rev'd on other grounds*, *Bell v. Cone*, 535 U.S. 685 (2002); *see also* MICH. CT. R. 6.502(G)(1).

When a petitioner has procedurally defaulted his federal claim in state court, he must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The Supreme Court has held, however, that federal courts are not required to engage in the cause and prejudice analysis if the defaulted claims can be more easily resolved on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily

resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Cone*, 243 F.3d at 971; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

## II. Merits

### A. *Post-Conviction DNA Analysis*

In his first ground for habeas corpus relief, Petitioner contends that he has a due process right to post-conviction DNA testing of a foreign hair collected from the victim's body after the incident.

Petitioner's trial counsel requested DNA testing of a foreign hair collected from the victim's body at a pre-trial hearing held on October 6, 2003. (Mot. Hearing Tr. 7, docket #14.) The prosecutor responded that all of the relevant hair samples were sent to the lab for hair analysis comparison. The prosecutor already had received the results of the comparison analysis and intended to offer them as evidence at trial. (*Id.*) The prosecutor further explained that the hair samples could be sent for a full DNA analysis, but such testing was quite costly and would take about six months. Defense counsel indicated that he would discuss the issue with Petitioner. (*Id.*) Shortly thereafter, the prosecutor filed a motion *in limine* stating that Petitioner had decided not to request the DNA testing, and, thus, should not be permitted to use the lack of DNA analysis as evidence of his

innocence. (Mot. in Limine, docket #20.) Petitioner subsequently waived his right to a trial and entered into a plea agreement.

In the circumstances of this case, Petitioner has no plausible claim that he was wrongfully denied a *pretrial* DNA test, as he decided not to pursue one. Petitioner argues, however, that there is a due-process right to post-conviction DNA testing where identification is a key issue in the case and the results could definitively establish the defendant's innocence. (Pet., docket #1-2, Page ID#20.) Petitioner cites only state court cases in support of his contention. Petitioner also cites a Michigan statute, MICH. COMP. LAWS § 770.16, providing for post-conviction DNA testing under limited circumstances. In denying Petitioner's motion to vacate plea, the trial court acknowledged that the issue of DNA testing had been raised before the court. (Mot. Hearing Tr. 23, docket #17.) The court discussed that Petitioner's DNA claim was "not on all fours with the statute as far as a post-conviction relief," because there had not been a trial. (*Id*.) The court also questioned the value of the test, because it was a multiple offender situation. The trial court further noted that the decision to forgo the DNA testing and proceed with a plea agreement was made by counsel working with Petitioner and his family. (*Id*.)

As an initial matter, it has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267. A plea not voluntarily and intelligently made has been obtained in violation

of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). Petitioner's claim does not challenge the power of the state to bring him into court. Thus, the only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and voluntarily entered into. *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."). Petitioner does not claim that the plea was not knowing and voluntary. Accordingly, his claim regarding DNA testing and related claim of ineffective assistance of counsel arising from pretrial proceedings are forfeited by his voluntary guilty plea.

Even if Petitioner's claim were not waived, it is without merit. To the extent Petitioner asserts a violation of state law, his claim is not cognizable for purposes of habeas corpus review. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a); *see also Estelle v. McGuire*, 502 U.S. 62 (1991). Moreover, in order to grant habeas corpus relief, the Court must find a violation of clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(b). Petitioner has not cited, and this Court is unaware of, any Supreme Court decision that would entitle Petitioner to post-conviction DNA testing. To the contrary, the Supreme Court of the United States has unambiguously concluded that there is no right under the Due Process Clause to obtain evidence for DNA testing in a post-conviction setting. *See District Attorney's Office v. Osborne*, 557 U.S. 52, 68 (2009). The Court rejected the Ninth Circuit's extension of trial rights to post-conviction relief, explaining that once an individual has been convicted for the offense with which he or she was charged, the presumption of innocence disappears. *Id.* at 69. The Court acknowledged that such a due process claim might

arise if the State's post conviction procedures "'offend[ed] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgress[ed] any recognized principle of fundamental fairness in operation.'" *Id.* (quoting *Medina v. California*, 505 U.S. 437, 446 (1992)). The Court found nothing inadequate about the procedures provided by the State of Alaska for post-conviction relief in general or how those procedures applied to those who sought access to DNA evidence. *Id*. at 69-70. The Sixth Circuit has held that Michigan law governing procedures for post-conviction DNA testing in criminal cases is more comprehensive than the state procedures sanctioned in *Osborne*, and, thus, adequately protects the due process rights of prisoners. *See In re Smith*, 349 F. App'x 12, 15-16 (6th Cir. 2009).

To the extent Petitioner asserts a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), his claim clearly is without merit. Under *Brady*, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Supreme Court has held that "[t]here are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 281 (quoting *U.S. v. Bagley*, 473 U.S. 667, 682 (1985)); *see also Cone v. Bell*, 556 U.S. 449, 469-70 (2009). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

Petitioner cannot meet any of the requirements for a *Brady* claim. In his case, hair comparison analysis was conducted, but the hair samples were not sent for DNA testing. Because the DNA analysis was never conducted, Petitioner cannot show that the evidence would have been favorable to his defense. Moreover, Petitioner does not dispute that he agreed not to have the DNA evidence tested, and, thus, he cannot argue that the evidence was suppressed by the State. Likewise, Petitioner cannot show prejudice. Identification was not at issue in this case. The victim accused Petitioner and Salvador-Jimenez of sexually assaulting him and picked both of them out of a line-up. Moreover, the DNA evidence could not definitively establish Petitioner's innocence. The hair found in the victim's body could have come from any number of people coming into contact with the victim. A finding that the hair belonged to someone other than Petitioner would not have excluded Petitioner as an offender. Consequently, Petitioner cannot show a reasonable probability that, had the DNA evidence been presented, the result of the proceeding would have been different.

B.   *Ineffective Assistance of Counsel*

In his second ground for relief, Petitioner claims that his trial counsel was ineffective for failing to discover and present potentially exculpatory DNA evidence.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The

defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

"When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

As discussed in the previous section, Petitioner cannot show that he was prejudiced by not having a full DNA analysis of the foreign hair collected from the victim. It is entirely possible that the foreign hair belonged to Petitioner's co-defendant or another unknown individual. Moreover, while physical evidence linking Petitioner to the victim would have strengthened the prosecutor's case, the lack of physical evidence did not "contradict" the victim's story as argued by Petitioner. A jury could easily have convicted Petitioner based upon the victim's identification of Petitioner. Petitioner, therefore, is not entitled to habeas corpus relief on his claim of ineffective assistance of counsel.

C. *Sentencing as an Adult*

In Ground III, Petitioner, who was sixteen-years-old at the time of the offense and seventeen-years-old at the time of sentencing, contends that the trial court abused its discretion by sentencing him as an adult.

Under Michigan's juvenile waiver statute, MICH. COMP. LAWS § 769.1(3), the trial judge is required to make findings as to six criteria used to determine whether to sentence as a juvenile or as an adult. Those criteria are set forth in MICH. CT. R. 6.931(E). The trial court relied upon several reports in making its decision, including the pre-sentence investigation report, a report prepared by the Family Independence Agency, a delinquency investigation report and a report prepared by a sex offender therapist/counselor. (Sentencing Tr. 4-5.) All of the reporters recommended against juvenile commitment. At the sentencing hearing, the trial court discussed each of the six criteria and concluded that an adult sentence was warranted in the case. (*Id*. at 36-39.) Petitioner contends that the trial court's findings with regard to the criteria set forth in the statute were erroneous and inadequate.

Petitioner's claim that the trial court abused its discretion in applying a state statute or court rule is not cognizable for purposes of federal habeas corpus review. *See Estelle*, 502 U.S. at 62. This claim implicates no federal right. Nor can Petitioner show that his sentence violates his Eighth Amendment right against cruel and unusual punishment. The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle

applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).

The Supreme Court has on several occasions explained how juveniles are different from adults when it comes to imposing criminal punishment. *See Miller v. Alabama*, 132 S. Ct. 2455, 2460, 2464 (2012); *Graham v. Florida*, 560 U.S. 48, 67–68 (2010); *Roper v. Simmons*, 543 U.S. 551, 569 (2005). These features that distinguish juveniles from adults have prompted the Supreme Court to impose limits under the authority of the Eighth Amendment upon specific kinds of sentences and sentencing practices for juvenile offenders. For instance, the Court has imposed an absolute bar to the imposition of the death penalty upon defendants under age 18. *Roper*, 543 U.S. at 575. Similarly, the Court has held unconstitutional sentences of life without parole for juvenile offenders who commit non-homicide offenses. *Graham*, 560 U.S. at 81. In addition, the mandatory imposition of a life-without-parole sentence upon a juvenile for any crime, including homicide, contravenes the Eighth Amendment. *Miller*, 132 S. Ct. at 2469.

In this case, Petitioner is not facing the death penalty or a sentence of life imprisonment without the possibility of parole. The Supreme Court never has found an Eighth

Amendment violation in a case such as this, where the trial court imposed a sentence of a term of years upon a juvenile offender. Petitioner, therefore, cannot establish that his sentence violated clearly established Supreme Court precedent. *See Bunch v. Smith*, 685 F.3d 546, 553 (6th Cir. 2012) ("Since Bunch was not sentenced to 'life without parole,' his sentence does not violate clearly established federal law."). Moreover, Petitioner's sentence of 15 to 23 years for first-degree criminal sexual conduct perpetrated on a six-year-old child is not grossly disproportionate to the offense or the offender. Petitioner is not entitled to habeas corpus relief.

D. *Sentencing Guideline Scoring*

Petitioner contends that the sentencing guidelines were improperly scored as to Offense Variables 7, 8, 9, 10 and 14. Petitioner also contends that his sentence was based on inaccurate information, relying on *Townsend v. Burke*, 334 U.S. 736 (1948), which established the proposition that the Due Process Clause prohibits a sentence which is based on inaccurate factual information.

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). Moreover, there is no constitutional right to individualized sentencing in non-capital cases. *Harmelin*, 501 U.S. at 995; *Thomas*, 49 F.3d at 261; *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978) (in a case holding that mitigating factors must be fully considered in death

penalty cases, the Court "recognize[d] that, in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes."). Petitioner has not alleged grounds for the Court to conclude that this is one of those rare instances where an alleged state-law sentencing error was so egregious that it led to a fundamentally unfair outcome. *See Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. 2005) (citing *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)).

A court violates due process when it imposes a sentence based upon materially false information. *Townsend v. Burke*, 334 U.S. 736, 740 (1948). Petitioner has the burden of demonstrating "first, that the information before the sentencing court was false, and, second, that the court relied on the false information in passing sentence." *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988) (citations omitted). Petitioner merely disagrees with the factual findings made and inferences drawn by the trial judge in scoring the offense variables. As the Court made clear in *Townsend*, an alleged error by the trial court in resolving a disputed factual question at sentencing does not constitute reliance on materially false information:

> Nor do we mean that mere error in resolving a question of fact on a plea of guilty by an uncounseled defendant in a non-capital case would necessarily indicate a want of due process of law. Fair prosecutors and conscientious judges sometimes are misinformed or draw inferences from conflicting evidence with which we would not agree. But even an erroneous judgment, based on a scrupulous and diligent search for truth, may be due process of law.

*Townsend*, 334 U.S. at 741. Petitioner, through counsel, objected to the scoring of the offense variables at the sentencing hearing. The trial court heard Petitioner's version of the facts, as well as testimony from Todd Bechler, author of the Pre-sentence Investigation Report, regarding each of the disputed offense variables. (Sentencing Tr. 7-28.) Relying upon the information and arguments

presented, the court drew inferences from the facts and concluded that Offense Variables 7, 8, 9, 10 and 14 were properly scored.[2] (*Id.* at 33-36.) While Petitioner disputes those findings, he has offered nothing to show that they were materially false. Thus, Petitioner fails to establish a due process violation under *Townsend*.

### E. Ineffective Assistance of Appellate Counsel

In his final ground for habeas relief, Petitioner contends that his appellate counsel was ineffective for failing to file a direct appeal asserting his claims.

Under the *Strickland* standard set forth above, in order establish a claim of ineffective assistance of counsel, Petitioner must prove that counsel's performance fell below an objective standard of reasonableness, and that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland,* 466 U.S. at 687-88. Because Petitioner pleaded guilty in this case, he did not have a direct appeal as of right; rather, he could only seek leave to appeal in the Michigan appellate courts. MICH. CT. R. 7.203(A)(1)(b). Hence, contrary to Petitioner's assumption, he had no right to a direct appeal. Leave to appeal is very rarely granted in a guilty plea situation. By filing a motion for relief from judgment, counsel gave the trial court another opportunity to review Petitioner's claims of error before seeking leave to appeal in the Michigan appellate courts. Counsel's strategy may not have been successful, but it was entirely reasonable. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Petitioner has failed to overcome the presumption that counsel's conduct was

---

[2] While the trial court affirmed the scoring of Offense Variables 7, 8, 9, 10 and 14, the court found that a score of five points for Offense Variable 3 was not clearly supported by the record and reduced the score to zero points. (Sentencing Hearing Tr. 33.)

within the wide range of reasonable professional assistance.  Moreover, even if the decision to file a motion for relief from judgement caused Petitioner to default his claims, he can demonstrate no prejudice because his claims are without merit.  Petitioner, therefore, cannot establish a claim of ineffective assistance of appellate counsel.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

Dated:  March 7, 2014         /s/  Joseph G. Scoville
                              United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).